UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FORT MYER CONSTRUCTION
CORPORATION,

       *Plaintiff*,

   v.

LEWIS F. SHRENSKY,

       *Defendant*.

Civil Action No. 1:23-cv-02275 (CJN)

**MEMORANDUM OPINION**

Lewis Shrensky claims that his termination by Fort Myer Construction Corporation was improper. He seeks a preliminary injunction temporarily reinstating him. *See* Mot. for Prelim. Inj., ECF No. 12. He also seeks to disqualify Fort Myer's counsel. *See* Mot. to Disqualify, ECF No.7. For the following reasons, the Court denies both motions.

**I.   Background**

This case arises out of a dispute between movant, Lewis Shrensky, and the business he helped found a half century ago, Fort Myer Construction Corporation. Countercl. ¶ 6, ECF No. 11. Until recently, Shrensky was Fort Myer's executive vice president; the company's co-founder, Jose Rodriguez, is its president. Shrensky's and Rodriguez's revocable trusts each hold 50% of the company's voting shares. Countercl. ¶¶ 12–13. And the pair comprises half of the company's four-person board of directors. Countercl. ¶ 11.

For decades Shrensky and Rodriguez "maintained a close personal friendship throughout their years of running one of the most successful paving and infrastructure contracting companies in the region." Countercl. ¶ 16. What changed is disputed. Shrensky contends that Rodriguez's

1

daughter improperly inserted herself into the company and along with others conspired to oust Shrensky, leading to his termination. *See* Mem. in Supp. of Mot. for Prelim. Inj. at 3–10, ECF No. 13 ("Shrensky's Br."). Fort Myer asserts that Shrensky is the one who attempted a power grab, including by forging Rodriguez's signature on a consent resolution in an effort to gain further authority within the company. Mem. in Opp. To Mot. for Prelim Inj. at 4–8, ECF 16 ("Fort Myer's Br."). The company alleges that Shrensky also forged Rodriguez's signature on several other agreements and engaged in other erratic behavior, such as threatening to "burn the company to the ground," threatening to seek judicial dissolution of the company, and interfering with Fort Myer's banking relationships. *Id.* at 8–16. Fort Myer says that it fired Shrensky because of this misconduct.

What is clear is that Shrensky was fired and litigation ensued. This case began when Fort Myer sued Shrensky for breach of fiduciary duty and tortious interference with contractual relations. *See generally* Compl., ECF 1. After moving to disqualify Fort Myer's counsel, Shrensky filed a counterclaim alleging wrongful termination and related theories. *See generally* Countercl. He also moved for a preliminary injunction. *See* Mot. for Prelim. Inj. The motion seeks (1) "an order that Fort Myer's termination of Mr. Shrensky was ultra vires and in violation of the Fort Myer Bylaws and his Employment Agreement"; (2) "an order reinstating Mr. Shrensky as Fort Myer's Executive Vice President"; and (3) "an order reinstating Mr. Shrensky as an authorized signatory on all Company bank and other accounts." *Id.* at 3.

Shrensky's theory is that Fort Myer lacked authority to fire him. He points primarily to three documents. First, he claims that his firing violated his employment agreement. *See* Shrensky's Br. at 13–15. That agreement states that "[s]ubject to the provisions for termination as hereinafter provided . . . this Agreement shall automatically be renewed on a month-to-month

2

basis unless either party gives the other written notice to terminate, which must be given at least sixty (60) days prior to the intended termination date." Ex. 12, Countercl. at ¶ 2. Later on, the agreement states that "termination of employment . . . shall occur upon the happening of" a series of events, for example if he "fails or refuses to comply with the reasonable policies, standards, and regulations of" Fort Myer; if he conducts himself in an "unethical, immoral, or fraudulent manner"; or if he "discredits [Fort Myer] or is detrimental to the reputation, character and standing of" the company. *Id.* at ¶ 12. Shrensky argues that Fort Myer violated the agreement by terminating him without 60 days' notice. *See* Shrensky's Br. at 13–15. Fort Myer responds by, among other things, contending that the 60-day notice provision is for termination without cause, and that termination for cause (under one of the enumerated scenarios) can be done without notice. Fort Myer's Br. at 24.

Shrensky also relies on the company's bylaws, which state that "[a]ny officer elected or appointed by the Board of Directors may be removed with or without cause at any time by the affirmative vote of a majority of the whole Board of Directors." Ex. 3, Countercl. Shrensky argues that he is a qualifying officer and that the company violated the bylaws by firing him without a vote of the Board. Shrensky's Br. at 14–15. Along with other arguments, Fort Myer points out that the provision says "may" and suggests that a Board vote was not required because this bylaw provision does not provide the sole route for removing an officer. Fort Myer's Br. at 18–23.

Finally, Shrensky relies on a 2019 consent resolution that states that the "Executive Vice-President shall share equally the powers vested in the office of President." Ex. 5, Countercl. Shrensky posits that if he and the President are co-equals, neither has the authority to fire the other, making his firing improper. *See* Shrensky's Br. at 15. Fort Myer says that the consent resolution

does not do what Shrensky claims, and is, in any event, ineffective because Shrensky forged some of the required signatures.  Fort Myer's Br. at 25–26.

## II. Motion for Preliminary Injunction

### A. Legal Standards

"A preliminary injunction is an extraordinary remedy that should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion."  *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).  A plaintiff seeking such relief must demonstrate that (1) it has a likelihood of succeeding on the merits, (2) it faces irreparable harm if an injunction does not issue, (3) the balance of equities favors relief, and (4) an injunction is in the public interest.  *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

A plaintiff must make "a clear showing that" it is "entitled to such relief."  *Winter*, 555 U.S. at 22.  And while the Court of Appeals has not yet directly held that a plaintiff must make a clear showing on each of the four *Winter* factors, considered dicta in this jurisdiction favors that approach.  *See In re Navy Chaplaincy*, 738 F.3d 425, 428 (D.C. Cir. 2013) (demanding proof on all four prongs); *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1296 (2009) (Kavanaugh, J., concurring) (observing that, after *Winter*, "the old sliding-scale approach to preliminary injunctions—under which a very strong likelihood of success could make up for a failure to show a likelihood of irreparable harm . . . is no longer . . . viable" (citations omitted)).

Regardless, it is clear that the movant must establish irreparable harm.  "The basis for injunctive relief in the federal courts has always been irreparable harm and the inadequacy of legal remedies."  *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (quoting *Sampson v. Murray*, 415 U.S. 61, 88 (1974)); *see also* 1 Joseph Story, Commentaries on Equity Jurisprudence as Administered in England and America § 33, at 32 (4th ed. 1846) (explaining that equity

4

jurisdiction attaches "where a plain, adequate, and complete remedy cannot be had" through legal remedies). "A movant's failure to show any irreparable harm is therefore grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006); *see Winter*, 555 U.S. at 21–22.

"[P]roving 'irreparable' injury is a considerable burden, requiring proof that the movant's injury is '*certain, great and actual*—not theoretical—and *imminent*, creating a clear and present need for extraordinary equitable relief to prevent harm.'" *Power Mobility Coal. v. Leavitt*, 404 F. Supp. 2d 190, 204 (D.D.C. 2005) (quoting *Wis. Gas*, 758 F.2d at 674). In addition, "the certain and immediate harm that a movant alleges must also be truly irreparable in the sense that it is 'beyond remediation.'" *Elec. Priv. Info. Ctr. v. U.S. Dep't of Just.*, 15 F. Supp. 3d 32, 44 (D.D.C. 2014) (quoting *England*, 454 F.3d at 297). The movant must "substantiate the claim that irreparable injury is likely to occur" and "provide proof . . . indicating that the harm is certain to occur in the near future." *Wis. Gas Co.*, 758 F.2d at 674. That is because "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

**B. Analysis**

The "cases are legion holding that loss of employment does not constitute irreparable injury." *Farris v. Rice*, 453 F. Supp. 2d 76, 79 (D.D.C. 2006) (citation omitted). Recognizing this, Shrensky contends that his loss of employment is special. The Court is not convinced.

1. Shrensky first argues that "Fort Myer's unlawful termination" and "public accusations of serious wrongdoing" are causing him "serious reputational harm." Shrensky's Br. at 16. It is true that "harm to reputation can in certain circumstances, constitute irreparable injury." *Jones v.*

5

*D.C.*, 177 F. Supp. 3d 542, 546–48 (D.D.C. 2016). "[A]s with all other forms of irreparable harm," however, "the showing of reputational harm must be concrete and corroborated, not merely speculative." *Trudeau*, 384 F. Supp. 2d at 297. But all Shrensky offers is "vague and unsupported" assertions of harm. *Brodie*, 715 F. Supp. 2d at 84.

To begin, Shrensky has not established that he is in fact suffering serious reputational harm. Most basically, he has failed to demonstrate that there is widespread knowledge of Fort Myer's allegations or that those who have heard the allegations believe them. In fact, Fort Myer's announcement to employees regarding Shrensky's departure makes no mention of his alleged misconduct. Ex. 13, Countercl. And Shrensky provides no evidence that Fort Myer's litigation documents have been widely read.

Instead, Shrensky speculates that positions he currently holds and future opportunities might be in jeopardy. For example, he claims that organizations for which he has served as a trustee "are likely to remove him" because of his termination. Shrensky's Br. at 17. But he provides no evidence that such actions are in the works or even that the organizations have any concerns at all about him. The closest he gets is his claim that the accusations have "forced him to defend himself and his fitness to members of" an organization he is the president of. *Id.* But even that "leave[s] room for substantial doubt." *See Arriva Med LLC v. HHS*, 239 F. Supp. 3d 266, 283 (D.D.C. 2017). His vague assertion does not tell the Court whether members of the organization raised specific concerns regarding Fort Myer's allegations or whether someone simply asked him generally about his work or lack thereof. "Any alleged reputational harm . . . is therefore speculative at best." *Mott Thoroughbred Stables, Inc. v. Rodriguez*, 87 F. Supp. 3d 237, 247 (D.D.C. 2015).

Moreover, even assuming some irreparable harm to his reputation, Shrensky does not establish that equitable relief would cure it. *See Arriva Med.*, 239 F. Supp. 3d at 283 (explaining that movants must demonstrate that "equitable relief would prevent irreparable harm" (cleaned up)). Most of his described reputational injury seems to stem from a concern that people will learn of or believe the allegations of erratic behavior that the company claims led to his firing. But a preliminary injunction would not prevent Fort Myer or others from discussing his alleged behavior publicly. And Shrensky provides no theory as to why a preliminary injunction, and an opinion which may simply focus on procedural errors in his termination, would change anyone's mind about the truthfulness of the allegations. Thus, Shrensky's allegations of reputational harm cannot justify a preliminary injunction.

2. Shrensky next contends that his loss of employment harms him irreparably because his termination has caused "serious[] damage[]" to "Fort Myer itself, and, therefore, [to] Mr. Shrensky's interest in it." Shrensky's Br. at 19. "Ordinarily, 'economic loss does not, in and of itself, constitute irreparable harm.'" *In re NTE Connecticut, LLC*, 26 F. 4th 980, 990 (D.C. Cir. 2022) (quoting *Wis. Gas*, 758 F.2d at 674). Instead, "[r]ecoverable monetary loss may constitute irreparable harm only where the loss threatens the very existence of the movant's business." *Wis. Gas*, 758 F.2d at 674.

Shrensky has not demonstrated any such threat. He does allege that Fort Myer's bank has "become increasingly concerned about the Company and Fort Myer's actions against Mr. Shrensky" and "froze Fort Myer's investment accounts." Shrensky's Br. at 19. But the situation does not seem so dire. The bank's letter states that it "is agreeable to making any investments and distributions from the Account which are jointly authorized." Ex. 1, Shrensky's Br. Basically, because the bank received "conflicting representations regarding the control of the" account, the

bank will not allow unilateral action by one side of the dispute. *Id.* Shrensky and the company can still act if they cooperate. Moreover, it is hard to see why the bank's letter signaled much of a sea change. Shrensky seems to have claimed, even before his termination, that his approval was required before any banking actions could be taken. Ex. 8, Countercl. ("Mr. Shrensky has the right and authority . . . to withhold his consent to any action taken or attempted to be taken" regarding banking"). Regardless, injunctive relief will not solve the problem because the bank's concerns stem from the fact that there is a "dispute." Ex. 1, Shrensky's Br. The entry of a preliminary injunction will not resolve the dispute, which means a preliminary injunction will not alleviate this alleged injury.

Next, Shrensky asserts (without citation) that "in light of Mr. Shrensky's termination and Fort Myer's litigations against him," Fort Myer's bonding agent has "demanded that both Mr. Shrensky and Mr. Rodriguez . . . approve each and every bid bond request, and has indicated that it will likely seek personal guarantees from Mr. Rodriguez and Mr. Shrensky, among other additional assurances." Shrensky's Br. at 19. Again, solving this issue is in Shrensky's and Rodriguez's hands, not the Court's. They can cooperate to meet the bonding agent's requirements. And, in any event, those requirements were apparently triggered by the existence of the "litigation[]," meaning again that preliminary injunctive relief (which will not terminate the litigation) will not solve the problem.

Shrensky also fears the company will run aground without his steady hand on the wheel. Shrensky's Br. at 19-20. He claims (again without citation) that Rodriguez is not competent to run the business properly and that Shrensky has always been the one holding things together. *Id.* But Shrensky has failed to establish that the company will fail absent injunctive relief.

3. Finally, Shrensky claims (for the first time in his reply brief) that his termination has caused him irreparable injury because "his ability to participate in the management of Fort Myer has been eliminated." Reply to Opposition to Mot. for Prelim. Inj. at 18-19, ECF No. 22 ("Shrensky's Reply Br."). He cites out of circuit cases for the proposition that the "right to participate in corporate management has value in and of itself and a denial of that right, without more, can give rise to irreparable harm." Shrensky's Reply Br. at 19 (citing, *e.g.*, *Wisdom Imp. Sales v. Labatt Brewing Co.*, 339 F.3d 101, 115 (2d Cir. 2003)). But those cases generally "turn[] on the need to preserve bargained-for-rights that, once lost, could never be restored." *Open Tech. Fund v. Pack*, 470 F. Supp. 3d 8, 30 (D.D.C. 2020), *vacated as moot*, No. 20-5195 (D.C. Cir. March 16, 2021). And Shrensky has not explained why his employment as Vice President fits that mold. He has not established that his employment was the sort of bargained-for right described in the cases he cites. Nor has he established that his continued presence on the company's board and status as a part owner of the company fails to sufficiently safeguard his ability to participate in the company's management.

It is particularly hard to view Shrensky's inability to continue in his position as seriously irreparable (i.e., not compensable) harm, given that he has already put a price on his removal. Before his firing, Shrensky "tendered a buyout offer" that "included a provision that Mr. Rodriguez could buyout Mr. Shresnky" on terms specified by Shrensky. Countercl. ¶ 53. Shrensky made his position even clearer by going so far as threatening "judicial dissolution" if Rodriguez did not offer "a comprehensive and acceptable buyout." Ex. 8, Countercl. In other words, Shrensky was perfectly happy—indeed eager—to relinquish control for the right price. And in the event that Shrensky is ultimately successful in his claims against Fort Myer, he would be entitled to damages making him whole.

\*\*\*

In sum, Shrensky has failed to show irreparable harm. Accordingly, the Court will not consider any of the other preliminary injunction factors. *See CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995); *Dallas Safari Club v. Bernhardt*, 453 F. Supp. 3d 391, 399 (D.D.C. 2020).[1]

### III. Motion to Disqualify

A final issue remains: Shrensky's motion to disqualify. "A motion to disqualify counsel is committed to the sound discretion of the district court." *Ambush v. Engelberg*, 282 F. Supp. 3d 58, 61 (D.D.C. 2017) (citation omitted). Disqualification of an attorney "is highly disfavored," and any motion to disqualify "is therefore examined with a skeptical eye." *United States v. Crowder*, 313 F. Supp. 3d 135, 141 (D.D.C. 2018). That is because disqualification "negates a client's right to freely choose his counsel" and can be sought "to advance purely tactical purposes." *Ambush*, 282 F. Supp. 3d at 62 (citations omitted).

Shrensky's motion to disqualify Connie Bertram and Bertram LLC is based on his theory that Bertram and her firm are or were simultaneously representing Fort Meyer and some of the company's "directors, officers, employees, members, [and] shareholders"—specifically, Rodriguez and his daughter. Mot. to Disqualify at 6 (citation omitted). But Fort Myer has persuasively represented that neither Bertram nor her firm have engaged in any such concurrent representation. Mem. in Opp. to Mot. to Disqualify at 2–3, 5–6, ECF 10. Rather, "Bertram LLP ceased representing Mr. Rodriguez and Ms. Rodrigues before being retained by [Fort Myer]" and

---

[1] Although the lack of irreparable injury resolves this motion, the Court notes that the other factors do not decidedly tip in Shrenksy's favor. It appears to the Court that a preliminary injunction would, on balance, harm, rather than help Fort Myer. And the company has presented counterarguments to Shrensky's claims that suggest his likelihood of success on them is not plain. *See supra* pp. 2–4.

"[n]either Ms. Bertram nor Bertram LLP represent either Mr. Rodriguez or Ms. Rodrigues in connection with this litigation." *Id.* at 6. Shrensky has not adduced any evidence that convinces the Court otherwise.

In any event, Shrensky is not impacted by any potential conflict of interest. He was never a client of Bertram or Bertram LLC, so neither would have any information obtained from him via an attorney-client relationship that could harm him in this litigation. Thus, any concurrent representation would risk harm only to the company or Rodriguez and his daughter. It is not Shrensky's place to step in and assert their rights. *See Colyer v. Smith*, 50 F. Supp 2d 966, 968 (C.D. Cal. 1999). Regardless, the Court perceives no "serious question as to counsel's ability to act as a zealous and effective advocate for the client, nor a substantial possibility of an unfair advantage to the current client because of [a] prior representation of the opposing party." *Koller v. Richardson-Merrell Inc.*, 737 F.2d 1038, 1056 (D.C. Cir. 1984) (citations omitted), *vacated on other grounds*, 472 U.S. 424 (1985). Thus, Shrensky's concerns do not justify disqualification.

## IV. Conclusion

For these reasons, Shrensky's Motion for Preliminary Injunction and Motion to Disqualify are **DENIED**. An order will issue contemporaneously with this opinion.

DATE: January 17, 2024

                                                    CARL J. NICHOLS
                                                    United States District Judge