IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| |
|---|
| **FORT MYER CONSTRUCTION CORPORATION**, <br><br><br> Plaintiff/Counterclaim-Defendant, <br><br> v. <br><br> **LEWIS F. SHRENSKY**, <br><br><br> Defendant/Counterclaim-Plaintiff. |

Civil Action No.:  1:23-cv-2275 (CJN)

## ORDER REGARDING DISCOVERY PROCEDURE

This is an action (1) by Plaintiff/Counterclaim-Defendant Fort Myer Construction Corporation ("FMCC") against Defendant/Counterclaim-Plaintiff Lewis F. Shrensky ("Shrensky" and together with FMCC, the "Parties") for breach of fiduciary duty, conversion and tortious interference with contractual relations; and (2) by Shrensky for wrongful discharge/breach of contract.

WHEREAS, the Parties mutually seek to reduce the time, expense, and other burdens of discovery of certain ESI, as described further below, and to better define the scope of their obligations with respect to preserving and producing such information and materials;

WHEREAS, the Parties therefore are entering into this Stipulation with the request that the Court enter it as an Order;

NOW THEREFORE, it is hereby STIPULATED and ORDERED:

4

**<u>GENERAL PROVISIONS AND DEFINITIONS</u>**

1.      Except as specifically set forth herein, this Stipulation and Order does not alter or affect the applicability of the Federal Rules of Civil Procedure or Local Rules for the United States District Court for the District of Columbia.

2.      The production specifications set forth in this Stipulation and Order apply to Documents and ESI that are to be produced in the first instance in the above-captioned litigation.

3.      Obligations and rights not addressed in this Stipulation and Order are governed by the Federal Rules of Civil Procedure and the Local Rules for the United States District Court for the District of Columbia.

4.      The terms used in this Stipulation and Order that are also used in the Federal Rules of Civil Procedure have the same meaning that they have under the Federal Rules of Civil Procedure, unless otherwise provided in this Stipulation and Order. Whenever the terms set forth below are used in this Stipulation and Order, the following definitions apply.

a.      "Complaint" means the Complaint of FMCC and all amendments thereto in the above-captioned action.

b.      "Confidentiality Designation" means the "Confidential" or "Highly Confidential" designation applied to a document or transcript by a Producing Party under the terms of the Stipulated Protective Order entered in this Action. ECF No. 39.

c.      "Counterclaim" means the Counterclaim of Shrensky and all amendments thereto in the above-captioned action.

d.      "Custodian" means any individual, department, unit, or division of a Party or Non-Party that has possession, custody, or control of Documents, ESI, or data sources.

e. "Custodial Data Source" means Documents or ESI kept, used, or maintained by a Custodian, including but not limited to Documents or ESI kept on or in computers used for work purposes, email mailboxes, and folders on network drives or applications.

f. "Deduplication" means the process of removing identical copies of documents during a Producing Party's review of ESI.

g. "Documents" and "ESI" have the same definition as set forth in Federal Rule of Civil Procedure 34.

h. "Family" means an e-mail and all related attachments to that e-mail.

i. "Metadata" means information describing the characteristics of a Document, generated by the application that created or modified it or generated automatically by a computer or network operating system on which the Document is located.

j. "Native Format" means the file structure of a Document created by the original creating application (in contrast to a static image, which is a representation of ESI produced by converting a native file into a standard image format capable of being viewed and printed on standard computer systems, such as .TIFF or .PDF).

k. "Non-Party" means any natural person, partnership, corporation, association, or other legal entity not named as a Party in the above-captioned litigation.

l. "OCR" means the optical character recognition file that is the electronic or mechanical conversion of images into searchable text.

m. "Paper Records" or "Hard Copy Documents" means Documents existing in paper form at the time of collection.

n. "Party" or "Parties" means one or more of the parties in the above-captioned litigation.

6

o.      Producing Party" means a Party or Non-Party that produces Documents, ESI, or other information in response to a formal or informal request for production of Documents, ESI, or other information.

p.      "Requesting Party" means a Party that requests, formally or informally, the production of Documents, ESI, or other information.

q.      "Search Term" means a combination of words (including synonyms) and phrases designed to capture potentially relevant ESI and includes strings of words and phrases joined by proximity and Boolean connectors or other syntax.

r.      "Searchable Text" means the native text extracted from ESI and any OCR text generated from a Hard Copy Document or electronic image.

**COLLECTION AND REVIEW**

5.      Each Producing Party will use reasonable search methodologies to collect, review, and produce relevant and responsive, non-privileged Documents and ESI in response to requests for production.

6.      In the event a Producing Party objects to a request for production on the basis that the request is overly broad and/or unduly burdensome, upon request by the Requesting Party, prior to reviewing for and producing responsive Documents and ESI, the Producing Party shall disclose to the Requesting Party, if relevant, (1) the Search Terms it intends to use to search for and identify potentially responsive Documents and ESI; (2) the Custodial and non-Custodial Data Sources to which Search Terms shall be applied; (3) information sufficient for the Requesting Party to assess whether the chosen Custodial and non-Custodial Data Sources are appropriate; and (4) other disclosures reasonably necessary for the parties to meet and confer and resolve disputes related to

7

search methodologies. Following such disclosures, the Parties shall meet and confer and use reasonable efforts to reach agreement on the search methodologies.

7.    A Producing Party may deduplicate electronic files during their collection and review of Documents and ESI. Deduplication should occur both vertically within each Custodian and horizontally across Custodians.

**<u>PRODUCTION</u>**

8.    The following procedures apply to producing Documents or ESI. Compliance with these procedures constitutes compliance with Federal Rule of Civil Procedure 34(b)(2)(E) for this matter.

9.    Except as stated otherwise below, ESI being produced by a Producing Party shall be converted to TIFF images, with each page branded with a unique Bates number.

a.    Unless otherwise agreed by the Parties, the TIFF images must be produced electronically by secure FTP and accompanied by (1) an image cross reference file that associates each Bates number with its corresponding single-page TIFF image file; (2) a "data load file" (.DAT) containing each of the applicable metadata and bibliographic fields described in Appendix A; and (3) a comma delimited control list file (.LST) containing the Bates number and the full path to the extracted text/OCR text as it exists on the delivery media. Nothing in this stipulation requires a Party to manually populate a metadata field in Appendix A if such fields cannot be extracted from a Document.

b.    Hard Copy Documents shall be scanned by the Producing Party and produced in accordance with the TIFF Plus Text specifications above.

c.    E-mail attachments must be processed and produced as though they were separate documents, and the text load file must include fields in which a Producing Party identifies, for each email, and its attachments the BegAttach and EndAttach of the family range.

8

d.      Microsoft Excel and other data spreadsheet files ("Spreadsheets") must also be produced in Native Format. If Spreadsheets contain privileged text that must be redacted before production, a Producing Party may image the Spreadsheets and produce them in accordance with the TIFF Plus Text specifications above. If producing Spreadsheets in Native Format, the Producing Party shall provide a placeholder TIFF image that shows the name of the file and has a Bates number.

e.      With respect to any other kinds of electronic data, including videos, voice messages, etc., a Producing Party must produce in Native Format or initiate a meet-and-confer to determine a reasonably usable form for the production. If producing electronic data in Native Format, the Producing Party must provide a placeholder TIFF image that shows the name of the file and has a Bates number.

10.     Except as stated above, a Producing Party need not produce the same ESI in more than one form.

11.     A Producing Party may withhold small image files or extracted embedded files that are unresponsive or irrelevant, even if other Documents in the same Document Family are responsive. A Producing Party shall not withhold otherwise non-privileged documents on a claim of privilege merely because other Documents in the same Document Family are privileged.

12.     The Metadata fields associated with each electronic Document will be produced, to the extent they are available, in accordance with Appendix A. This list of Metadata fields does not create any obligation to create or manually code fields that are not automatically generated by the processing of the ESI or that do not exist as part of the original Metadata of the Document.

**PAPER RECORDS**

13.     Paper Records will be scanned or otherwise converted into electronic form from Hard Copy Documents in the following format:

9

a.      All Hard Copy Documents shall be scanned to single page Group 4, TIFF format, at least 300 dpi and 8 $\frac{1}{2}$ X 11-inch page size, except for Hard Copy Documents requiring higher resolution or different page size.

b.      In scanning Hard Copy Documents, distinct Documents should not be merged into a single record, and single Documents should not be split into multiple records (i.e., Hard Copy Documents should be logically unitized). The Parties will make their best efforts to have their vendors unitize Documents correctly and will commit to address situations where there are improperly unitized documents.

c.      Productions of the images shall be made using an image load file (.OPT or .LFP) and a delimited database/metadata load file (.DAT). Each image file should have a unique file name which shall be the Bates number of the page.

d.      The following objective coding fields should be provided, if applicable: (1) beginning Bates number; (2) ending Bates number; (3) beginning attachment Bates number; (4) ending attachment Bates number; (5) page count; and (6) Custodian.

e.      Document level OCR should be provided as a separate text file. The file name of each text file should correspond to the file name of the first image file of the Document with which it is associated. The text files will not contain the redacted portions of the Documents.

f.      For Hard Copy Documents, the Parties need only populate the following metadata fields: "BEGDOC," "ENDDOC," "PROD VOLUME," "CUSTODIAN "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL," "REDACTION," fields, as well as "BEGATTACH" and "ENDATTACH" fields where applicable.

g.      Black-and-white ("B&W") Hard Copy Documents shall be produced as single-page, B&W group IV TIFFs imaged at 300 dpi. To the extent that a static image has been

created of any Hard Copy Document containing color and/or grayscale, such static image containing color and/or grayscale shall be produced, except for Documents requiring higher resolution or different page size. If not previously imaged in color or grayscale, the Parties will use reasonable efforts to produce Hard Copy Documents containing color and/or grayscale as static images with grayscale and color, respectively. A Requesting Party may request that Documents be re-produced with the coloration of the original document by providing a list of the Bates numbers of Documents it requests to be produced in color format. In the event the Producing Party objects to re-producing the Documents, the Parties shall meet and confer within five (5) business days, or longer for good cause shown.

h.      Upon notice from the Requesting Party that a Document or portion thereof is illegible, the Producing Party shall use reasonable efforts to produce a legible copy in the form of either a new TIFF, static image, or hard copy. The Producing Party shall use reasonable efforts to maintain the Document's original orientation (i.e., portrait to portrait, landscape to landscape). No Producing Party shall be required to alter or re-create any Document for which no grayscale or color version is in the Party's possession or control or for which the original Hard Copy Document is illegible.

**NATIVE FORMAT PRODUCTION**

14.    The Parties will produce the following ESI types in Native Format, if they are available in Native Format:

a.      Word, Word Perfect and Google Docs documents;

b.      Excel spreadsheets;

c.      Audio/video files;

d.      Animations; and

e.      PowerPoint presentations.

11

15. A Requesting Party may request that Documents (identified by Bates number) be produced in Native Format. The Producing Party shall accommodate reasonable requests.

16. Any Document produced in Native Format, will be produced according to the following specifications:

a. A unique Bates number and Confidentiality Designation shall be used as the file name and the original file name and file extension shall be preserved in the corresponding load file.

b. The Native Format Documents shall be accompanied by reference information that sets forth for each Document, sufficient information to allow the Parties to track and authenticate the Native Format Documents produced, including: (1) the name of the Custodian from whose files the Document is produced; (2) an appropriately calculated "MD5 Hash Value"; (3) the original name of the Document; and (4) a Bates number.

c. Any Document produced in Native Format need not be imaged. Instead, a single page placeholder image shall be provided that indicates the Document was produced in Native Format and contains the Bates number and Confidentiality Designation of the corresponding Document.

## <u>MISCELLANEOUS PROVISIONS</u>

17. Before filing any motion with the Court regarding electronic discovery or evidence, the Parties shall meet and confer, including conferring by phone, video conference or in person, in a good faith attempt to resolve such disputes.

18. Unless this Court orders otherwise for good cause shown, each Party and Non-Party shall bear the costs of collecting, processing, reviewing, and producing its own documents.

19. The Parties' agreement to this Order is without prejudice to the right of any Party or Non-Party to seek an order from the Court to rescind or amend this Order, in full or in part, for

12

good cause shown. Nothing in this Order abridges the rights of any person to seek judicial review or to pursue other appropriate judicial action with respect to any discovery ruling made by the Court in this matter.

20.     "Appendix A" is a table describing the fields to be included in the databases produced by each Party.

21.     If a dispute arises under this Stipulation and Order that cannot be resolved through the meet and confer process, the Parties may submit their respective positions to the Court. A Party may not make a submission to the Court until it has made a good faith effort to confer concerning the dispute by phone, video conference or in person.

22.     This Stipulation and Order may be modified by stipulation of the parties or by the Court for good cause shown.

 SO ORDERED this 24th day of March, 2025

_____

Honorable Carl J. Nichols
United States District Judge

13

**<u>NAMES OF PERSONS TO BE SERVED WITH PROPOSED ORDER UPON ENTRY</u>:**

In accordance with Local Rule 7(k), listed below are the names and addresses of the

attorneys and parties to be notified of the proposed Order's entry:

Connie N. Bertram
Bertram LLP
1717 K Street, NW, Suite 900
Washington, DC 20006
cbertram@bertramllp.com


S. Scott Morrison
Corey S. Peterson
Nicholas E. McGuire
KATTEN MUCHIN ROSENMAN LLP
1919 Pennsylvania Ave., NW, Suite 800
Washington, DC 20006
scott.morrison@katten.com
corey.peterson@katten.com
nicholas.mcguire@katten.com

14

### APPENDIX A

All requested fields are to be included in the data load file, to the extent the information is maintained and able to be extracted from a Document. Nothing in this stipulation requires a Party to manually populate a metadata field if such fields cannot be extracted from a Document.

| Field Name | Field Description | Field Type | Hard Copy | Email | Other ESI | Calendar Items | IMs, Texts, Chats |
|---|---|---|---|---|---|---|---|
| DOCID | The unique sequential document control number of the first page of the document. Cannot contain spaces or special characters. | Note Text | ✓ | ✓ | ✓ | ✓ | ✓ |
| ENDDOC | The unique sequential control number of the last page of the document. Cannot contain spaces or special characters. | Note Text | ✓ | ✓ | ✓ | ✓ | ✓ |
| CUSTODIAN | Name of the individual, or group/department for shared resources, from whose files the document originated. Format: Last, First or ABC Dept. Use consistent naming and formatting across all productions. | Note Text | ✓ | ✓ | ✓ | ✓ | ✓ |
| VOLUMENAME | Unique production volume identifier applied (e.g., ABC00 1-001 ). | Note Text | ✓ | ✓ | ✓ | ✓ | ✓ |
| BEGATTACH | Used for documents in a family group (e.g., an email with attachments). Populated with the document control number of the parent document. Populated for each child document as well as the parent document. | Note Text | ✓ | ✓ | ✓ | ✓ | ✓ |
| ENDATTACH | Used for documents in a family group (e.g., an email with attachments). Populated with the ENDDOC of the last child record in the family group. Populated for each child document as well as the parent document. | Note Text | ✓ | ✓ | ✓ | ✓ | ✓ |
| TIMEZONE | The Time Zone in which the data was processed. | Note Text | | ✓ | ✓ | ✓ | ✓ |

| FROM | Sender of the Email, Instant Message, Text Message, Chat, or Calendar item. | Note Text | | ✓ | ✓ | ✓ | ✓ |
|---|---|---|---|---|---|---|---|
| TO | Primary recipients of the Email, Instant Message, Text Message, Chat, or Calendar Item. Separate multiple entries with a semi-colon followed by a space. | Multi-Entry | | ✓ | ✓ | ✓ | ✓ |
| CC | Copies of the Email, Instant Message, Text Message, Chat or Calendar Item. Separate multiple entries with a semi-colon followed by a space. | Multi-Entry | | ✓ | ✓ | ✓ | ✓ |
| BCC | Blind Copies of the Email, Instant Message, Text Message, Chat or Calendar Item. Separate multiple entries with a semi-colon followed by a space. | Multi-Entry | | ✓ | ✓ | ✓ | ✓ |
| SUBJECT | Subject line of the Email, Instant Message, Text Message, Chat, calendar item, or Notes item. | Note Text | | ✓ | ✓ | ✓ | ✓ |
| DATESENT | Date and time the Email, Instant Message, Text Message, Chat or Calendar Item was sent. Format: MM/DD/YYYY HH:MM:SS (use 24 hour times, e.g., 13:32:00 for 1:32 pm); time zone indicators cannot be included). | Date-Time | | ✓ | ✓ | ✓ | ✓ |
| DATERECEIVED | Date and time the Email, Instant Message, Text Message, Chat or Calendar Item was received. Format: MM/DD/YYYY HH:MM:SS (use 24 hour times, e.g., 13:32:00 for 1:32 pm); time zone indicators cannot be included. | Date-Time | | ✓ | ✓ | ✓ | ✓ |
| DATECREATED | Date and time the electronic file was created. Format: MM/DD/YYYY HH:MM:SS (use 24 hour times, e.g., 13:32:00 for 1:32 pm); time zone indicators cannot be included). | Date-Time | | | ✓ | | ✓ |
| EORGANIZATION | "Company" field value pulled from the metadata of a native file. | Note Text | | | ✓ | | |
| EAUTHOR | Author field value pulled from the metadata of a native file. | Note Text | | | ✓ | | |

16

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ESUBJECT | Title or Subject field value pulled from metadata from electronic file. | Note Text | | | ✓ | | |
| FILENAME | Original file name of the native file, including file extension. | Note Text | | ✓ | ✓ | ✓ | ✓ |
| FILEEXTENSION | File extension of original native file; e.g., XLSX, PDF, DOCX | Max 5 chars | | ✓ | ✓ | ✓ | |
| FILEPATH | Full qualified original path to the native when collected. | Multi-Entry | | ✓ | ✓ | ✓ | |
| DATESTART | Start date and time of calendar appointments, voice messages, chats, text message conversations. Format: MM/DD/YYYY HH:MM:SS (use 24 hour times, e.g., 13:32:00 for 1:32 pm); time zone indicators cannot be included. | Date-Time | | | | ✓ | ✓ |
| DATEEND | End date and time of calendar appointments, voice messages, chats, text message conversations. Format: MM/DD/YYYY HH:MM:SS (use 24 hour times, e.g., 13:32:00 for 1:32 pm); time zone indicators cannot be included. | Date-Time | | | | ✓ | ✓ |
| | | | | | | | |
| DURATION | The elapsed time of the audio, video, voice message. Format HH:MM:SS | Note Text | | | ✓ | | |
| TXT-PARTICIPANTS | List of participant names and/or telephone numbers. | Note Text | | | | | ✓ |
| | | | | | | | |
| DATETIME ATTACHMENT SENT | Combined date and time attachment was sent; only populated for child attachment records | | | | | | ✓ |

17

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| MOBILE DATA TYPE | Identifies specific mobile data types which can be multiple types for a single record | | | | | | ✓ |
| NUMBER OF ATTACHMENTS | Count of child records; only populated for parent message records | | | | | | ✓ |
| PARTICIPANT COUNT | Count of participants on record; only populated for parent records | | | | | | ✓ |
| MOBILE FROM | Contact information (phone number, email address, chat ID) and name as stored on custodian's device, if available, for attachment sender and call sender | | | | | | ✓ |
| MOBILE TO | Contact information (phone number, email address, chat ID) and name as stored on custodian's device, if available, for call recipient(s) | | | | | | ✓ |
| CALL-DIRECTION | Identifies if Call Log record was incoming to custodian or outgoing from custodian | | | | | | ✓ |
| CALL-STATUS | Identifies if Call Log record was answered or missed by custodian | | | | | | ✓ |
| CALL-VIDEO | Identifies if Call Log record included video call | | | | | | ✓ |

18